15 oral argument, 15 minutes per side. Mr. True for the appellant. Good afternoon, your honors. Guthrie True for the appellant, Chris Eaton, and I'd ask to reserve three minutes, your honor, for rebuttal. May it please the court, the witness tampering convictions against Chris Eaton at the time the sitting sheriff of Barron County were grounded on a collateral and immaterial dispute. That being, where was this knife found? Was it found at the scene of the struggle and arrest of the felon Billy Randall Stennett? Or was it found moments later in Stennett's pocket as he was being escorted from the point of arrest to the police vehicles? This combined with the fact that the convictions on counts four and five, the witness tampering convictions, are grounded solely on the testimony of those who have admitted to perjury, we would submit, provide the court with more than ample grounds to set aside and overturn these verdicts. I would submit, your honors, that the evidence is insufficient to support a verdict under section 1512B3 in this case. In order to sustain a verdict, the defendant has to be shown to knowingly, corruptly persuade another person or to attempt to do so. Secondly, to do so with an intent to hinder, delay, or prevent the communication to a federal official. And finally, that information must concern the commission or possible commission of a federal offense. The first very troubling aspect of this case is that it is grounded in testimony of only two witnesses, both of whom admitted to perjury, not in the abstract, but with regard to this particular case. The cooperating witness minor testified that in the state court proceedings against Stennett, he claimed at trial that he provided perjured testimony to the state district court judge in the preliminary hearing, that he provided perjured testimony to the state grand jury, and that he provided a false account to the FBI when he was first interviewed by them on April 20, 2010. Was his testimony sufficient to sustain the decision that your client was guilty? I don't believe it was, your honor, and I don't believe it was for a reason. If I could get to just a moment, because the other cooperating witness, Runyon, also admitted or claimed at trial to have testified, to have given perjured testimony before the federal grand jury, where he not only admitted or claimed at trial, I guess I should say, that he perjured himself in front of the grand jury despite immunity, but also that he forgot the critical account that he provided to the jury at trial, which was, if anything, supported the count on count four under Runyon's testimony. It would have been that critical account that he claimed to forget. Here's the reason, your honor, in answer to your question, Judge Seiler, I would submit that neither the testimony of minor or Stennett is sufficient. We have two critical but undisputed facts in this case that drive the decision, I believe, on these witness tampering counts. One is that it's undisputed that at the time Sheriff Eaton confronted Stennett at that enclosed quadrangle where Stennett was fleeing on foot, and Sheriff Eaton was pursuing him on foot, it is undisputed that Stennett, when he turned and confronted Sheriff Eaton, he had something in his hand. A vial was found at the scene, and Stennett conceded at trial that what he had in his hand was a vial, which any responsible officer would certainly assume under those circumstances. An hour-long pursuit, avoiding two roadblocks, the felon fleeing on foot and being pursued on foot, any responsible officer under those circumstances would assume that that was a weapon. But the second undisputed fact is maybe even more critical, and that is that there is no dispute that Stennett was armed with a knife. No dispute about that. Here's the crux. The only issue is a debate about where the knife was found. Was it found on the ground? It's also undisputed that it was not the knife that Stennett was wielding at Eaton, correct? Well, I believe at trial it was developed that he claimed not to have the knife in his hand. He claimed to have the vial in his hand. It's undisputed that a vial was found at the scene where the arrest occurred. The debate is, was the knife found at that scene, or was it removed moments later from Stennett's pocket as he was being led away from the scene? But here, I think, is the critical aspect of that. This is a corrupt persuasion case. I think even the government concedes that there's no coercion here. There's no threat or intimidation. This is a corrupt persuasion case. So even taking the evidence in the light most favorable to the government, as we have to do in this case, of course, and assuming for a moment that Eaton did try to persuade Miner or Runyon to tell something about the knife, this can't be corrupt, where it is undisputed that Stennett was armed with a knife. He was in possession with a knife. It is at most a disagreement about where the knife was found. That cannot be corrupt. For persuasion to be corrupt, there must be a morally debased purpose. The Third Circuit held that in the Farrell case that we cited. More recently, the Tenth Circuit has so held in the Baldrige case. Both of those cases, particularly the Baldrige case, I think that's 559 F. 3rd 1126, talked about how corrupt persuasion isn't even defined in the statute. And it is explained, I think the court said, in a fairly unhelpful manner. So this debate that we've got about where a knife was found, although it's undisputed that he was armed with a knife. But did it make any difference if the knife was open or whether it was closed in his fist? I don't believe it was, Your Honor, because what we have here in this circumstance, not to drill down too deeply in the facts, but when you have an hour-long pursuit, as we've had, of this Billy Randall Stennett all over the northern part of Barron County, Kentucky, he's chased by a number of officers by vehicle. He avoids two roadblocks. He goes around these stop sticks. He crashes into a house in a church. He flees on foot. It's discovered then he's got a meth lab in the van. And then he's confronted alone for a very short moment by Sheriff Eaton on foot in this enclosed area where the only way to escape is through the sheriff to go over him. And the sheriff, it's undisputed, observes something in his hand, and it's undisputed Stennett had something in his hand. Certainly it was responsible to assume that that was a weapon. There was not time... But he wasn't convicted of the civil rights violations. He was convicted of witness tampering. It's exactly right. No, I mean, all that is, you know, his justification for the beating, if it occurred, was not, is not at issue in these, in this pursuit at this time. That's exactly right, Your Honor. But it leads to the point also that the information about the knife was not material to any possible federal offense. You didn't know the jury was going to acquit him. At the time when he allegedly requested that the false information be given about the knife, he was expecting and he was indeed indicted. I don't remember if it was before or after indictment, but in any event he was expecting or knew that there was a possibility that charges would be brought against him arising out of his conduct when he first encountered Stennett. Well, but the problem with that theory, Your Honor, I would respectfully submit, is that number one, Stennett did have the knife. He was in possession of the knife. As I said, what we... Well, the natural inference to be drawn from the government's version of the facts is he wanted to make it look as if Stennett had the knife confronting him that he might have had a justification for taking the action he allegedly took. But here's the problem with... To create a justification that the true facts did not permit. And I certainly understand that that's the inference the government wants to draw here. The problem with that inference is the investigation was always about, the case was always about, not what occurred when Sheriff Eaton confronted Stennett at the scene, but what occurred after Stennett was arrested, after he was handcuffed. One cannot be a knowingly corrupt persuader as to a matter that is collateral and not material to the commission of a possible federal offense. And whether or not Stennett possessed... Are you telling us that the civil rights violations that were alleged occurred after Stennett was in custody? That's the government's theory, that he was beaten after he was cuffed. So that's the very point. What occurred at the point of the first contact between Sheriff Eaton and Stennett is not material, is not material to the allegations of... At what point in the investigation is your client alleged to have approached the two witnesses in question? Well, that's a matter of debate, I suppose. With regard to Runyon, he is alleged to have approached Runyon the afternoon and evening of March 4, 2010, the day he supposedly learned of the investigation from Agent Brown. With regard to Mr. Minor, it's interesting, and I'd point the court to page ID number 1526 of Minor's testimony. Minor testified that Sheriff Eaton provided this account of what supposedly occurred, that he wanted Minor and other deputies supposedly to include in their reports when Minor's being asked about that, he says that occurred on the same day that Sheriff Eaton learned of the investigation, which was March 4. But here's an interesting point about his testimony. He was asked, what did you think about the story that Eaton came up with? And he said, I really didn't like it. And he said, why not? Because if you're going to cover it up, it should have been better than that. And he was asked, what do you mean? He said, because it, that is the story, it said that he, Stennett, it said that Stennett was noncombative when we cuffed him. And the allegations were that he was beaten after he was cuffed. That is the very day that Minor is claiming that he was writing his report under the direction of Sheriff Eaton, the same day that Sheriff Eaton supposedly learned of the investigation from Agent Brown, where even Minor is saying, we knew from the very outset this was an investigation about whether or not Stennett was beaten after he was cuffed. This case had nothing to do with what occurred before Stennett was cuffed. The court, in this, in the Carson case that Your Honor, Judge Gibbons wrote the opinion in, talked about in these witness tampering cases that there has to be a federal interest. The court said, federal jurisdiction under 1512b-3 is based on the federal interest of protecting the integrity of a potential and federal investigations, ensuring that the transfers of information to the federal law enforcement officers and judges relating to the possible commission of federal offenses be truthful and unimpeded. My point, Your Honor, is that when this... Counsel, actually you've run over... I'm sorry, I didn't pay attention. I apologize. I apologize. Thank you. Your Honors, may it please the court. Erin Flynn on behalf of the United States. As Mr. True made clear, this case arises out of the FBI's investigation into excessive force allegations arising out of Mr. Stennett's arrest in February 2010. With all due respect, we disagree that this case had nothing to do with what happened when the officers confronted Stennett. The district court made clear that this case was always about the confrontation, how the circumstances of the arrest, how it was that Mr. Stennett got his injuries, and whether or not the level of force that the officers, including Sheriff Eaton, used during the arrest would have explained the injuries that Mr. Stennett sustained. I'll begin with the sufficiency of the evidence claim. Taking all the facts and the verdict in the government's favor, any rational fact finder could hear fine that the government met the three essential elements of the case beyond a reasonable doubt. And the district court, in denying the post-trial motions, said that the evidence as to the witness tampering counts was strong. It denied the Rule 33 motion for a new trial, and it denied the Rule 29 motion based on the sufficiency of the evidence. As to the three elements, the government proved that Defendant Sheriff Eaton knowingly, corruptly persuaded Runyon Minor, or attempted to do so. He pressed a false story upon them as to what occurred with this knife. As Judge Gibbons raised in her questions, whether the knife was found at the confrontation site obviously would inform the sorts of statements that the defendants were giving to the FBI regarding what happened when Stennett, when they first confronted Stennett. So while it's undisputed that there was force used and that Defendant Eaton struck Stennett with a baton upon confronting him. Was this before or after he was shackled? This was, well the testimony differs. The defendant, the victim Stennett's testimony is that when he was cornered in the kind of dead end alleyway and Eaton approached him, that he attempted to surrender and that he sort of fell to his knees and that Eaton was striking him with a baton at that point. And that's how it explains the nine staple sort of gash to his head in terms of the injuries. It's Defendant Eaton's version of the story that when he confronted Stennett, he thought that he had something in his hand. And for that reason, he used justified force in striking the victim at that time and it wasn't until the other officers arrived that they were able to wrestle Stennett and handcuff him. At which point, the co-defendant minor talked about this kind of continued use of force that was unreasonable in terms of punching Stennett, in terms of kicking Stennett. But all of those disputes as to what occurred goes to the excessive force allegations. And as Judge Gibbons said, the defendants were acquitted on those allegations. We're left to hear just looking at the two witness tampering convictions and those go to when Sheriff Eaton was giving his story, Wood saying that, and having minor say that there was a knife recovered on the ground or that they recovered the knife at the confrontation scene and having Runyon say that he recovered the knife or that a knife was found at the confrontation scene support the defendant's version of the events. And as to that, we'd say that clearly it was knowingly, corruptly persuading Runyon and minor. Both of those officers said that that's not how the version of events went down. That's not how the knife was found. And the only evidence that the jury heard about the actual recovery of the knife was from minor as to this knife was recovered during the pat down when Stennett was already escorted from the scene. And as to Runyon, Runyon wasn't even at the confrontation site. He hadn't observed the arrest scene on that day. And here he's a lifelong friend of the sheriff. And it was very compelling testimony from Runyon as to here this is my lifelong friend. I wasn't even there, came to me, said, hey, I need you to have my back, essentially, on these excessive force allegations that I now know the FBI is investigating. And so I need you to say that you saw this knife up on the arrest scene. And he brings Runyon back there after Runyon expresses hesitancy in sort of going along with that story and brings him back to the arrest scene, shows him, okay, here's where this knife was supposedly found. This is what we're going to say. And in all of the testimony, there's no testimony that ever places the knife at that confrontation scene. And so to say that this is all immaterial really contradicts the evidence. It contradicts the district court statements about what this case was about. It contradicts the government's theory of this case from the beginning. If this court looks at the trial memorandums in this case, the government from the very beginning said that this was about the circumstances of the arrest and how these injuries were obtained and what happened in terms of pressing this false story upon these two deputies. And it's not to be. The falsity that he got them to testify about, was it that they'd seen the knife or they found the knife at the scene or was it something else? Right, that the knife was recovered at the arrest scene. And that completely contradicts the evidence that Minor gave about the knife being recovered from the inside of Stinnett's pocket after he was escorted from the arrest scene and they did a pat-down of him. And so if you say, well, Sheriff Eaton thought that there was something or that he had a weapon and that there was a vial and that's undisputed, it's very different from whether or not a knife was brandished at the scene or whether or not, in Eaton's original statements, a pistol was brandished at the scene. And placing the knife on the ground at the arrest scene, which is what he had both Minor and Runyon give statements about and had Minor testify about in state court, bolsters his version of the events, knowing that the FBI was looking into a potential Section 242 violation as to excessive force in this case. Also, just in response to the defendant's argument about the admitted perjurers, this court's been clear that the credibility of witnesses is in the jury's sole province. This wasn't inherently incredible testimony. It wasn't testimony that was contrary to human experience or completely at odds with common sense. This was a defendant who pressed false stories upon two of his deputies who were under his command, who testified about the pressures they felt to fall into line, the pressures that they felt about their job. Runyon, as I said, had compelling testimony about just wishing that he could hold out until retirement so that he could have all of his years of service in and then retire. And so there was plenty here for this jury to convict the defendant on both of these counts. And to the extent that the defendant's focusing on this notion of admitted perjurers, this isn't your typical jailhouse informant case. This isn't your typical case of witnesses that have long criminal convictions. These are two deputies forced by their boss to fall into line with a false story, and the defendants here had ample opportunity to cross those witnesses on the inconsistencies in their statements, which the witnesses fully explained. And they hammered the credibility arguments and their closing arguments, and it was for the jury to decide whether or not they were going to believe these two witnesses. Just as to quickly, unless the court has other questions on sufficiency of the evidence, as to some of the other points, as to both the jury instructions, those instructions were not requested at trial. It's plain error review. Taking the instructions as a whole, there was no prejudice to the defendant, and this court's been clear that even incorrect instructions under plain error review rarely warrant reversal. And here they are omitted instructions, so they're not prejudicial statements of the law. As to the special unanimity instruction, this court's decision in Gray and Schmeltz is directly controlling on the issue. The witness tampering sort of underlying facts as to Adam Miner's tampering in Count 5 did not need to be charged as separate offenses. That is explained in the Gray case. And as to the prosecutorial misconduct issue, as we laid out in our brief, we don't think that these were improper comments. They were made in response to factual theories that the defendants asserted in their closing arguments. And to the extent that this court would even assume they were improper, which courts often do in their decisions, they weren't flagrant. They didn't mislead the jury in any way. The jury wasn't inflamed. It acquitted two of the defendants on all of the charges. It acquitted Sheriff Eaton on the assault-based charges, which was what the comments were referring to. And they weren't extensive comments in any way. And unless this court has questions about any of these issues, we rest on our brief and ask you to affirm the two convictions on the witness tampering counts. All right, thank you. Just a couple or three points, if I could, Your Honors. First of all, we disagree with the contention that the case was about the conduct at the time of the confrontation. If you look at the indictment, throughout the indictment it uses language like while in official custody. It uses language throughout the counts, cuffed behind his back. The indictment is replete with language that is about charging offenses that occurred after Stennett was handcuffed. And as a result, what occurred at the time of the initial confrontation was immaterial. It was collateral to the events. And we believe that, I would submit, that that does not invoke a federal interest. Again, I go back to the two facts that are undisputed. One is that Stennett did have something in his hand. We know that was the vial. Secondly, he was in possession of the knife. And when you have those kinds of undisputed facts in the case, it flies in the face of the notion of corrupt to say that any effort by Sheriff Eaton to press a story, as the government uses the word, has a corrupt motive. That's why, and we admit, we did not ask for the 15E instruction, but as it turns out in this case, it was critical because when you look at the verdict, the jury acquitting Sheriff Eaton on all the assault-related counts, the jury acquitting him of providing a false report about the arrest, about an alleged assault, about a weapon, acquitting him of providing false testimony to the FBI, which addressed the arrest, it addressed the Stennett, supposedly his belief that he possessed a weapon. When you look at that, it appears that the jury mistakenly concluded if Sheriff Eaton told the deputies to say anything in their reports that that was witness tampering. And it is not a crime for Sheriff Eaton to instruct the deputies or direct the deputies to include information in his report. But the jury was instructed on that, and they came back with a guilty verdict. Well, they weren't instructed, Your Honor, under 1512E, that if they believed the conduct was solely for lawful conduct and the defendant's intention was to induce or cause them to testify truthfully. But you didn't ask for that. That's right. I didn't ask for that. You're correct, Your Honor. It's awful hard to overturn one on plain air on jury instructions. Well, it is difficult, except in this instance, we believe it does affect the substantial rights of the defendant because it presents the real probability that there's been a conviction here for what is innocent conduct. The right of the sheriff to give direction to his deputies to include information in their reports, that is not a crime. That is not corrupt persuasion. Thank you, Your Honor. Thank you, and the case is submitted. There being no further cases, you can adjourn.